IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-047-FL

| | |
|---|---|
| LADSON BREARLEY and RAKESH KHAN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   ORDER<br>) |
| FDH INFRASTRUCTURE SERVICES LLC, | )<br>)<br>) |
| Defendant. | ) |

This matter is before the court on plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c). (DE 11). The issues raised by plaintiff's motion have been briefed fully, and in this posture, are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiffs commenced this action on December 28, 2023, in the Superior Court of Wake County, North Carolina, alleging defendant terminated or constructively terminated plaintiffs wrongfully after each objected to alleged fraud and mismanagement by defendant.

Defendant removed to this court February 2, 2023, on the basis of federal question jurisdiction, under 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446. Defendant asserts in its notice of removal that plaintiffs' claims arise under the laws of the United States, specifically 41 U.S.C. § 4712, which provides employees of federal contractors with "protection from reprisal for disclosure of certain information."

1

Plaintiffs filed the instant motion to remand February 8, 2023, asserting that their well-pleaded complaint did not raise a federal question. As part of the motion to remand, plaintiffs request payment of costs, including attorney's fees, incurred as a result of removal. Defendant responded in opposition and plaintiffs replied.

**STATEMENT OF FACTS**

The facts alleged in plaintiffs' complaint may be summarized as follows. Plaintiff Ladson Brearley ("Brearley") worked as a "Facility Security Officer" for Defendant FDH Infrastructure Services, LLC, which provides engineering services as a federal defense contractor, beginning in May 2017. (See compl. ¶¶ 2, 11, 13). Plaintiff Rakesh Khan ("Khan") "was the next line manager . . . in the unit involved with the federal contract at issue." (Id. ¶ 2).

Defendant allegedly sought to address cashflow issues by "circumventing governmental rules," (id. ¶ 14), including inter alia by submitting "fraudulent or deceptive billing submissions to the Department of Defense," (id. ¶ 17), and falsely certifying "how . . . federal funds were used [and] how resources were allocated . . . to meet contractual achievement milestones." (Id.). Defendant terminated Plaintiff Brearley's employment June 28, 2022, (see id. ¶ 11), allegedly "in retaliation for his efforts to identify and stop the . . . mismanagement . . . of government funds." (Id. ¶ 18). "Pressed to continue the practices after [plaintiff] Brearley's termination, [plaintiff] Khan confronted [defendant's] senior management and the foreign investor controlling management operations . . . and refused, resigning his . . . employment." (Id. at 7).

**COURT'S DISCUSSION**

A.   Remand

    1.   Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008).

    2.   Analysis

Under the federal removal statute, "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). There is no allegation of diversity of citizenship between the parties in this case. "Accordingly, the propriety of removal depends on whether the case falls within the provisions of 28 U.S.C. § 1331," Mulchaney v. Columbia Organic Chemicals, Inc., 29 F.3d 148, 151 (4th Cir. 1994), which specifies that a federal district court's federal question jurisdiction comprises "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). This means that the "plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Accordingly, the "first

3

step" in examining the complaint "is to discern whether federal or state law creates the cause of action." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005).[1] This usually ends the inquiry, because "the vast majority of cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986).

However, even "where a claim finds its origins in state rather than federal law," there exists "a special and small category of cases in which [federal question] jurisdiction still lies." Gunn v. Minton, 568 U.S. 251, 258 (2013). A case belongs to this special category when a moving party shows that the "federal issue is 1) necessarily raised, 2) actually disputed, 3) substantial, and 4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. "Federal jurisdiction will lie only if a case meets all four requirements." Pressl v. Appalachian Power Co., 842 F.3d 299, 303 (4th Cir. 2016). "The mere presence of a federal issue in a state cause of action is not enough to confer jurisdiction," and "courts are to be cautious in exercising jurisdiction of this type." Burrell v. Bayer Corp., 918 F.3d 372, 380 (4th Cir. 2019); see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 313 (2005) ("[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto.").

  a.  Necessarily Raised

The instant case fails to fulfill the requirement that a federal issue is necessarily raised. Under Fourth Circuit precedent, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when <u>every</u> legal theory supporting the claim requires the resolution of a federal issue." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182

---

[1] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

(4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law for purposes of § 1331." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 818 (4th Cir. 2004).

Defendant argues that plaintiffs' claim for "wrongful discharge under the public policy exception to [North Carolina's] employment at will doctrine," (compl. ¶ 66), arises under federal law because it requires plaintiffs to prove that defendant violated federal laws governing defense contractors, (see DE 23 at 27), that "[p]laintiffs objected to the violations, and [that defendant] terminated them in reprisal for their objections." (DE 23 at 11). Plaintiffs, however, assert that defendant not only violated federal laws, but also ran afoul of North Carolina's prohibitions against fraud. (See DE 1-2 at 6) (alleging that plaintiffs objected to "fraudulent or deceptive billing submissions" and "false claims/certifications"). Plaintiffs assert in addition that defendant terminated plaintiff "Brearley's employment in retaliation for his efforts to identify and stop the . . . gross mismanagement of the government contract and/or fraud[.]" (Compl. ¶ 18) (emphasis added).

Plaintiffs' wrongful discharge claim thus in that part could be resolved under North Carolina law, without requiring "the resolution of a federal issue." Flying Pigs, 757 F.3d at 182 (4th Cir. 2014). In North Carolina, "an employee without a definite term of employment [ordinarily] is an employee at will and may be discharged without reason." Coman v. Thomas Manufacturing Co., Inc., 325 N.C. 172, 175 (1989). An exception to this general rule exists, however, "when the employer's acts violate the public policy of North Carolina." Young v. Bailey, 368 N.C. 665, 668 (2016). "Although the definition of public policy approved by [the North Carolina Supreme] Court does not include a laundry list . . . at the very least public policy is

5

violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992). The North Carolina General Statutes prohibit fraud. See, e.g., N.C.G.S. §75-1.1; Bumpers v. Community Bank of Northern Virginia, 367 N.C. 81, 82 (2013) ("Section 75-1.1 has long encompassed conduct tantamount to fraud."); see also Baldine v. Furniture Comfort, 956 F. Supp. 580, 588 (M.D.N.C. 1996) (finding fraud to be "the gravamen" of an N.C.G.S. § 75-1.1 claim). Accordingly, plaintiffs' claim does not necessarily raise any issue of federal law.

In addition, plaintiffs' claims for an injunction barring defendant from enforcing their non-compete agreements and declaratory relief holding those agreements unenforceable arise entirely under state law, and no argument has been made that federal question jurisdiction exists on either of these claims. (See DE 23 at 22) (arguing that this court should exercise only supplemental jurisdiction over these claims). Accordingly, the case should be remanded for lack of subject matter jurisdiction.

Defendant argues that "each of the alleged violations, if proven, constitute a violation of federal law." (DE 23 at 9). Even so, these actions also may constitute violations of state law, and federal question jurisdiction on a purely state law claim will not lie where "there is no reason that the state court could not decide . . . on purely state law grounds . . . if it wished." Vlaming v. West Point School Board, 10 F.4th 300, 308 (4th Cir. 2021).

Defendant argues in addition that adjudication of plaintiffs' claims "will inevitably and necessarily require construction of [defendant's] contract with the [Department of Defense], construction of the federal statutes and regulations applicable to defense contractors, and consideration of evidence and argument regarding the [defendant]-[Department of Defense] contract and [defendant's] measures to comply with its federal legal obligations." The Fourth

6

Circuit sitting en banc has previously rejected a "restrictive reading" of a complaint alleging an analogous wrongful discharge claim under South Carolina law, in a case in which plaintiff alleged defendant fired him for exercising rights protected by both the United States and South Carolina constitutions. Dixon v. Coburg Dairy, 369 F.3d 811, 818-19 (4th Cir. 2005). Finding that only one of plaintiff's three legal theories "even arguably involve[d] the resolution of a substantial question of federal law," the court held removal improper. Id. at 819. Where a legal avenue paved entirely with state law is available to the instant plaintiff, removal likewise is improper in this case.

    b.    Substantial

In addition and in the alternative, the federal issues presented in this case fail to fulfill Gunn's substantiality requirement where defendant has not demonstrated that "the question is significant to the federal system as a whole." Gunn, 568 U.S. at 264. In general, "a nearly pure issue of law, the resolution of which would establish a rule applicable to numerous . . . cases" is substantial, while a "fact-bound and situation-specific" issue is not. Empire Healthchoice Insurance, Inc. v. McVeigh, 547 U.S. 677, 681 (2006). The Fourth Circuit previously has held that the resolution of questions requiring "fact-intensive inquiries into [defendant's] compliance with certain [federal] requirements" was not "substantial in the relevant sense." Burrell, 918 F.3d at 385. That court also found that claims which were "purely backward-looking, limited to monetary relief for [defendant's] alleged past non-compliance with federal . . . standards" were not substantial enough to give rise to federal question jurisdiction.

Plaintiff's claims are similarly fact-specific and retrospective. Plaintiffs allege that defendant "sought to circumvent governmental rules . . . [by] re-directing cash reimbursed by the government for use in the payment of subcontractors, reducing staff[,] and maintaining inadequate staffing levels." (Compl. ¶ 14). Whether this particular defendant complied with reimbursement

7

and staffing rules is not "significant to the federal system as a whole." Gunn 568 U.S. at 264. Nor is the question of whether this particular defendant sought to "circumvent federal governmental restrictions involving the active managerial involvement of [defendant's] foreign ownership by Invica Holdings S.A.R.L. and its controlling interest holder, Julian Mash, a foreign national." (Compl. ¶ 22). Accordingly, no significant federal question exists in this case.

B.     Costs and Attorneys' Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c).

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

In addressing a request for attorneys' fees in the context of remand, the United States Court of Appeals for the Fourth Circuit has looked to whether removing defendants "provided detailed arguments and comprehensively briefed the issues arising from their removal, including with reference to a wide range of case law." Common Cause v. Lewis, 956 F.3d 246, 257 (4th Cir. 2020). The Fourth Circuit also has looked to whether "[w]ithin our Circuit, indeed within North Carolina, there is precedent for a defendant to remove . . . litigation to federal court under the" basis advanced in the notice of removal. Id.

Though defendant's arguments were unsuccessful, they were detailed and comprehensively briefed, with defendant correctly citing appropriate caselaw and providing

8

thorough explanations of its position.  (See, e.g., DE 23 at 3) (providing the four-part test upon which the court relied).  The Supreme Court has described this challenging legal area as a canvas "that Jackson Pollock got to first."  Gunn, 568 U.S. at 258.  Accordingly, the court declines in its discretion to award attorneys' fees.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand (DE 11) is GRANTED in part and DENIED in part as set forth herein.  In particular, that part of the motion seeking remand is GRANTED, whereas the remaining part of the motion seeking costs and attorney's fees is DENIED.  This case is REMANDED to the Superior Court of Wake County, North Carolina, for further proceedings.  The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the Superior Court of Wake County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order.

SO ORDERED, this the 26th day of April, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge